UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAMELA K. PATCHETT,

    Plaintiff,

v.                                                                CASE NO. 6:17-cv-1557-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

### MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on February 10, 2016, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from January 1, 2011, the alleged disability onset date, through July 27, 2016, the date of the ALJ's decision.[2] (Tr. 19-31, 44-68, 196.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

[2] Plaintiff had to establish disability on or before September 30, 2016, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 20.)

1

I.     Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

II.    Discussion

Plaintiff raises two issues on appeal: (1) that the ALJ erred in giving "only

some weight" to the opinions of her treating physician, Todd Gates, D.O.,[3] while giving "great weight" to the opinions of the State agency non-examining medical expert, Edward Jasinski, Ph.D., and (2) that the ALJ erred in failing to obtain testimony from a Vocational Expert ("VE") about the effect on the job market of Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. The Court finds that a remand is required as to the first issue and, therefore, does not address the second issue.

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ

---

[3] Plaintiff also contends that the ALJ improperly gave "only some weight" to the opinions of Robert Kurzhals, Ph.D., HSPP, and Barbara M. Paulillo, Psy.D. (Tr. 28-29.)

must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, see *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam). See also *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008)

4

(per curiam). *See also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

Here, at step two of the five-step sequential evaluation process, the ALJ found that Plaintiff's borderline intellectual functioning, among others, was a severe impairment. (Tr. 22.) Then, after considering the medical evidence and opinions of treating, examining, and non-examining sources, the testimony at the hearing, and other relevant evidence in the record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 25.) The ALJ's RFC assessment included the following mental limitations: "The claimant can understand, remember, and carry out simple instructions. The claimant has the ability to make simple, work related decisions." (*Id.*)

As part of his RFC determination, the ALJ addressed Dr. Gates's opinions as follows:

> Todd Gates, M.D., completed an Ability to [D]o Work Related Activities (Mental) form on August 14, 2015 (Ex. 7F). Dr. Gates provided some treatment of the claimant found at Exhibit 10F. In his treating records, he gave the claimant a Global Assessment of Functioning[] (GAF)[] score of 58 to 60 (Exhibit 10F). Dr. Gates opined that the claimant could understand, remember and carry out very simple instructions. However, he opined that she had disabling

5

limitations [in] her ability to maintain concentration, maintain attendance, perform at a consistent pace, accept instruction, and be aware of normal hazards. He opined that she was seriously limited in her ability to interact with the general public and maintain socially acceptable behavior. Dr. Gates opined that she would miss more than 4 days a month of work. Dr. Gates appears to have only seen the claimant from June to October of 2015. Dr. Gates indicated in his records that the claimant had cognitive slowness, but his findings of her disabling levels [sic] of limitations is [sic] inconsistent with her records showing past work and her normal activities of daily living, discussed above. Dr. Gates also had not treated the claimant for very long when he provided his opinion. Therefore, the undersigned gives his opinion only some weight.

(Tr. 29.)

The ALJ also addressed Dr. Jasinski's opinions:

Edward Jasinski, Ph.D., completed answers to a Medical Interrogatory on May 13, 2016 (Ex. 12F, 13F). He reviewed the evidence and provided his opinion. Dr. Jasinski believed that the claimant did have an intellectual disability; however, the level of deficit was unclear, as the claimant appeared to be exaggerating her problems. He explained that in Exhibit 6F, the evaluators accepted her IQ scores despite noted exaggeration on MMPI testing (Ex. 6F/5, 12/1-2). This personality assessment found the claimant endorsed items indicative of symptoms exaggeration and marked over reporting (Exhibit 6F/5). Dr. Jasinski explained that they ruled the MMPI testing invalid and found the IQ scores valid, as they were similar to other IQ scores. However, Dr. Jasinski felt that they were wrong, because an individual who exaggerates once is just as likely to have done so on another examination[,] [e]specially since the prior IQ testing also found the claimant did not make consistent efforts. Moreover, Dr. Jasinski[] believed that if the claimant had an intellectual disability, as severe as she has alleged, it would have been documented in school records or the like (Ex. 12F).
. . .
He reviewed the record after the hearing and found that the claimant had moderate limitation [sic] [in] concentration, persistence, or pace. Dr. Jasinski opined that the claimant was able to understand, remember and carry out simple instructions. Dr.

6

> Jasinski opined that she was able to make simple work related
> judgements [sic]. Dr. Jasinski opined that the claimant had only mild
> limitations [in] her ability to get along with others and deal with
> changes in her routine. Dr. Jasinski was able to review the entire
> record, including the longitudinal treatment for her mental
> impairments and her intelligence testing from multiples [sic] sources.
> Therefore, the undersigned gives his opinion great weight.

(Tr. 27-28.)

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it fails to take into account Dr. Gates's opinions. Importantly, as Plaintiff notes in her brief, Dr. Gates issued opinions regarding Plaintiff's ability to perform work-related activities on two occasions.[4] The first time was during Plaintiff's third office visit on August 14, 2015.[5] As shown above, the ALJ expressly considered and gave only some weight to Dr. Gates's August 14, 2015 opinions in his July 27, 2016 decision.[6]

---

[4] After the ALJ's decision, Dr. Gates sent another letter to Plaintiff's counsel to corroborate her case. (Tr. 15.)

[5] On August 14, 2015, during Plaintiff's third visit to Dr. Gates's office, Dr. Gates filled out a form, entitled Medical Opinion Re: Ability to Do Work-Related Activities (Mental), describing Plaintiff's ability to perform work-related activities as of June 9, 2015, the first day of treatment. (Tr. 449-50.) In that form, Dr. Gates opined that Plaintiff was seriously limited in seven categories, was unable to meet competitive standards in eleven categories, had no useful ability to function in five categories, and would be absent from work more than four days per month due to her impairments or treatment. (Tr. 449-50.)

[6] As quoted earlier, the ALJ accorded only some weight to Dr. Gates's August 14, 2015 opinions, because (1) it appeared that Dr. Gates had only seen Plaintiff from June to October 2015, (2) Dr. Gates's findings of disabling limitations were inconsistent with the records showing past work and with Plaintiff's daily activities, and (3) Dr. Gates had not treated Plaintiff "for very long when he provided his opinion." (Tr. 29.)

7

The second time Dr. Gates expressed his opinions was on July 19, 2016, only days before the ALJ's decision, when he responded to questions regarding Dr. Jasinski's May 13, 2016 answers to the ALJ's Medical Interrogatory. In response to the Medical Interrogatory, Dr. Jasinski opined that the level of Plaintiff's intellectual deficit was unclear. (Tr. 514.) Dr. Jasinski stated:

> While the evaluator in [Exhibit 6F] noted exaggeration on the MMPI[,] they [sic] accepted [Plaintiff's] IQ scores as valid because low scores were obtained on [two] separate [visits]. . . . An individual who exaggerates on one measure is just as likely to do so on another measure. A separate evaluation completed in 2 [illegible] 4F noted poor effort and felt the resulting IQ scores were an underestimate of abilities. This finding is consistent with the overreporting of symptoms on the MMPI in [Exhibit] 6F which resulted in that test being considered invalid. In my opinion[,] [the claimant] appears to be exaggerating/overreporting symptoms for the purpose of secondary gain. School records which might assist in clarifying this issue were not provided. If intellectual limitations were present they would have been documented in these records.

(Tr. 514-15.) Then, Dr. Jasinski opined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, and in the ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (Tr. 516, 520.) He concluded that Plaintiff was capable of performing the work she had performed in the past. (Tr. 519.)

Upon receipt of Dr. Jasinski's answers to the ALJ's Medical Interrogatory, on June 27, 2016, Plaintiff's counsel sent a letter to the ALJ with comments on

8

Dr. Jasinski's answers.⁷ (Tr. 326-27.) In the letter, Plaintiff's counsel requested "an opportunity to have Dr. Gates review Dr. Jasinski's opinion and comment" and an "opportunity to submit 8 additional months of Dr. Gates' treatment records" within 20 days. (Tr. 327.) It does not appear that the ALJ responded to counsel's request.⁸ Nevertheless, by a letter dated June 28, 2016, Plaintiff's counsel forwarded Dr. Jasinski's answers, along with other records, to Dr. Gates.⁹ (*See* Tr. 525.)

On July 19, 2016, Dr. Gates answered the questions from Plaintiff's counsel pertaining to Dr. Jasinski's May 13, 2016 opinions as well as Dr. Gates's earlier opinions. The questions and corresponding answers are as follows:

> (1) Do you agree with Dr. Jasinski's opinion that Ms. Patchett is "exaggerating - over reporting symptoms for [the] purpose of secondary gain"? Please explain your answer citing any clinical

---

⁷ Plaintiff's counsel's comments are detailed and will not be included in full in this Order. However, it is worth mentioning that counsel addressed Dr. Jasinski's comment about the lack of school records, as follows: "As I informed you on 2/22/16, I sent a Student Records/Transcript Request to Miami-Dade County Public Schools but was unable to obtain records. The claimant attended special education classes at North Miami Senior High School and graduated in 1995. 4E/3." (Tr. 327; *see also* Tr. 319 ("I was unable to obtain high school records from Miami-Dade County Public Schools. Apparently, these were destroyed.").)

⁸ In the decision, the ALJ acknowledged Plaintiff's counsel's comments, without mentioning his requests, and stated that the comments had been considered. (Tr. 19.) The ALJ also stated that "no additional medical or education[al] records were received." (*Id.*) Although Dr. Gates's July 19, 2016 answers were included in the record as Exhibit 14F, the ALJ apparently did not see these answers.

⁹ These records included Dr. Kurzhals's December 6, 2013 psychological exam and February 4, 2014 WAIS-IV test results, and Dr. Paulillo's psychological evaluation dated March 31, 2015. (Tr. 525.)

9

findings you believe are relevant.

[Answer:] Patient is mentally retarded and suffers from Depression. Dr. Jasinski has never provided care to Pamela Patchett and is not in any position to monitor progress or regressions in this individual. He has not vicariously experienced her suffering and disappointments in academic or vocational pursuits.

(2) Do you agree with Dr. Jasinski's opinion that the FIT testing which resulted in a Full Scale IQ score of 58 were [sic] "an underestimate of [Ms. Patchett's] abilities"? Please explain your answer citing any clinical findings you believe are relevant.

[Answer:] There is no reason to question the experience of the expert evaluators [at] FIT. I would completely disagree with [Dr.] Jasinski and question his motives for disagreeing with the FIT testing [r]esults.

(3) Do you agree with Dr. Jasinski's opinion of your patient's functional limitations? Specifically, Dr. Jasinski opined Ms. Patchett has a *mild* restriction of [a]ctivities of [d]aily [l]iving, *mild* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence, or pace, and *mild* repeated episodes of decompensation, each of extended duration. Please explain your answer citing any clinical findings you believe are relevant.

[Answer:] Dr. Jasinski's opinion regarding Pamela's limitations seem to be grossly understated as she is very disabled.

(4) On 8/14/15, you provided your medical opinion regarding your patient's ability to do work-related activities for the time period beginning 6/09/15. Now that you have had more time to treat Ms. Patchett, how has your opinion changed? Please explain your answer citing any clinical findings you believe are relevant.

[Answer:] No. She struggles with activities of daily living and requires supervision from her brother[.]

(Tr. 525-26.)

The ALJ did not mention Dr. Gates's July 19, 2016 opinions in his decision

and there is no indication that he considered them. This is significant because in his answers, Dr. Gates reaffirms his earlier opinions and directly responds to Dr. Jasinski's conclusions on which the ALJ relied in formulating the RFC. The Court can only speculate whether the ALJ would have accorded the same weight to the medical opinions of record, including, *inter alia*, the opinions of Dr. Gates, Dr. Jasinski, Dr. Kurzhals, and Dr. Paulillo, and whether he would have reached the same conclusions as to Plaintiff's RFC and ability to work, if he had actually considered Dr. Gates's more recent opinions.[10] *See McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) (stating that courts must resist the temptation to "engage in direct fact finding" as that is "an affront to the administrative process").

Although the ALJ is not required to refer to every piece of evidence in his decision, he may not ignore relevant evidence, particularly when it supports Plaintiff's position. *See, e.g.*, *Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000); *Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . . Rather, the judge mut explain why significant probative evidence has been rejected.") (internal citations and quotation marks omitted). The evidence at issue supports

---

[10] To the extent the Commissioner may argue that this issue has been waived, the Court disagrees because it goes directly to Plaintiff's argument that substantial evidence does not support the ALJ's RFC determination and his consideration of the various medical opinions of record.

Plaintiff's position because it reaffirms Dr. Gates's earlier opinions, which the ALJ discounted, and responds to Dr. Jasinski's contrary opinions. The subject evidence, along with the opinions of Dr. Paulillo[11] and even Dr. Kurzhals,[12] seems inconsistent with Dr. Jasinski's opinion.

Based on the foregoing, the Court is unable to conclude that the ALJ's decision is supported by substantial evidence. *See Cowart v. Schweiker*, 662

---

[11] Following a psychological evaluation of Plaintiff on February 24 and 27 and March 31, 2015, Dr. Paulillo stated, in relevant part:

> [O]n the intellectual portion of this evaluation, Ms. Patchett consistently demonstrated overall intellectual ability in the Extremely Low range. She consistently showed marked deficiencies in working memory tasks compared to her performance across measured domains. . . . Despite her presentation being inconsistent with measured intellectual and adaptive ability, comprehensive testing including a malingering screening indicates Ms. Patchett was putting forth adequate effort leaving results valid and reliable for interpretation. . . . Ms. Patchett would benefit from vocational rehabilitation, as her low intellectual ability is likely to cause difficulty in finding and maintaining meaningful employment.

(Tr. 448.)

[12] On December 6, 2013, Dr. Kurzhals opined, in relevant part:

> Ms. Patchett's ability to understand and remember simple instructions is estimated to be mildly to moderately impaired, due to her intellectual limitations. Her ability to understand and remember complex instructions is considered to be moderately to severely impaired, due to her intellectual limitations. Her ability to relate to coworkers, supervisors, and the public is considered to be moderately impaired, due to her depression and intellectual limitations.

(Tr. 364.) On February 4, 2014, Dr. Kurzhals administered the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"), showing a Full Scale IQ score of 67, placing Plaintiff "within the extremely low range." (Tr. 374.) However, Dr. Kurzhals opined that Plaintiff's "adaptive functioning certainly suggest[ed] at least borderline abilities." (*Id.*)

F.2d 731, 735 (11th Cir. 1981) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'").

Therefore, this case will be remanded with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including all opinion evidence from Dr. Gates.[13] In light of this conclusion, the

---

[13] After the ALJ's decision, on September 1, 2016, Dr. Gates sent another letter to Plaintiff's counsel, which reads, in relevant part:

> This letter is being written as an update to corroborate [Plaintiff's] case as she is intellectually challenged with mental retardation and disabled by a severe major depressive disorder.
> Pamela's brother has been greatly involved to assist her in keeping appointments and ensures that her basic needs are being provided. Pamela remains very dependent upon family members for her sustenance on a day-to-day basis.
> Pamela was seen today in my office [sic] very depressed [sic] feeling helpless and hopeless with nowhere to turn. Her concentration remains very poor as she has failed [at] numerous attempts at employment. She is very depressed with suicidal feelings . . . . Extensive testing through Florida Institute of [T]echnology, Scott [C]enter[,] clearly identified the cognitive deficits and limitations in her intellectual capacity. Both clinical testing and direct administration of care have clearly identified Pamela's disabilities.
> Pamela is currently receiving a high dose of Effexor XR 150 mg daily to dress her major depressive disorder. She has had a limited partial response, but remains in a major depression. Her global assessment of functioning falls in the range between 50 and 55. We are doing all that is necessary to keep her from being hospitalized.

(Tr. 15.) The Appeals Council received Dr. Gates's September 1, 2016 letter, but stated that the letter did not relate to the period at issue. (Tr. 2.) Of note, Plaintiff had
(continued...)

Court need not address Plaintiff's second argument regarding her difficulties in maintaining concentration, persistence, or pace. *Freese v. Astrue*, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, *3 (M.D. Fla. Apr. 18, 2008) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including all opinion evidence from Dr. Gates, and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's

---

[13](...continued)
to establish disability on or before September 30, 2016, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 20.)

fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on August 13, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record